IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

FERRO PRODUCTS CORPORATION,

        Plaintiff,

v.                                            CIVIL ACTION NO.  2:14-cv-30752

CATTRELL COMPANIES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss, or in the alternative Motion to Transfer Action.  (ECF 6.)  For the reasons discussed herein that motion is **DENIED**.

*I.    Background*

This case is a contract dispute between Plaintiff Ferro Products Corporation ("FPC") and Defendant Cattrell Companies, Inc. ("Cattrell").  On December 23, 2014, FPC filed the instant action, alleging breach of contract and unjust enrichment stemming from Cattrell's alleged failure to pay certain amounts due under a contract between the parties.  (ECF 2 ("the Complaint").)  The operative terms of that contract, as well as the proper venue for this breach of contract action, are the subject of considerable dispute between the parties.  Cattrell is a general contracting company with principal place of business in Toronto, Ohio.  (ECF 7 (Defendant's Memorandum in Support of Motion to Dismiss).)  FPC is a broker and supplier of structural steel and architectural building products with a principal place of business in Charleston, West Virginia.  (ECF 2 ¶ 1.)  In 2012,

1

Cattrell was the general contractor for three construction projects in the northern panhandle of West Virginia and neighboring Ohio: (1) New Manchester Elementary School in Hancock County, West Virginia; (2) Weirton Elementary School in Hancock County, West Virginia; and (3) Steubenville Wastewater Treatment Plant in Steubenville, Ohio. (ECF 2 & 7.) For each of these projects, the parties negotiated for FPC to supply Cattrell with steel. The factual details surrounding those negotiations are largely undisputed.

Although the parties appear to have contemplated multiple projects from the outset of their communications, the steel was ordered and supplied pursuant to three separate transactions. (ECF 2 & 7.) The first transaction was commenced on April 26, 2012 when FPC sent Cattrell a price estimate form detailing the cost of providing steel products for the New Manchester Elementary School Project. (ECF 2-1, Exhibit A.) This form, labelled FPC Estimate No. 142-12 ("New Manchester Estimate") included the price at which FPC would deliver requested quantities of steel and steel products, and noted the following: "[w]e are pleased to quote you on behalf of our principals, and subject to acceptance by them, the following materials And/or [sic] services, F.O.B. shipping point with freight allowed to New Cumberland, WV." (*Id*.) Attached to the form was a list of terms and conditions labeled "Term and Conditions of Sale." (*Id*.) The front page of the New Manchester Estimate provided that "[t]his offer will remain open for your consideration for ten (10) days from date of proposal. Acceptance of this Proposal indicates Purchaser's agreement to all terms and conditions printed on the back hereof." (*Id*.) Although the form included a place for Cattrell to accept the proposal, the record does not indicate that any Cattrell agent ever signed to accept it. (*Id*. & ECF 7 at 4.)

On June 8, 2012, Cattrell sent FPC a purchase order form ("Purchase Order No. 7235"). Cattrell's form consisted of only one page with the handwritten notation "See Attached." (ECF 2-1, Exhibit A.) The attachment was the New Manchester Estimate, on which Cattrell indicated that it desired shipment of structural steel and parts for use on the New Manchester Elementary School job. (*Id.*) FPC alleges that this document "incorporated FPC's proposals and Terms and Conditions for each project." (ECF 2 ¶ 2.) Cattrell argues that it "never accepted any of the terms set forth on the reverse side of Plaintiff's bid sheet . . . ." (ECF 7 at 4.) Regardless, FPC provided the requested steel and sent Cattrell four invoices for steel supplied in the amount of $66,464. (ECF 2 ¶ 12.)

Negotiations for the Weirton Elementary School project followed the same pattern. FPC provided Cattrell with a price estimate on May 24, 2012. (ECF 2-2, Exhibit B.) This form was labelled FPC Estimate No. 174-12 ("Weirton Estimate"). The terms of the Weirton Estimate were identical to the New Manchester Estimate, including the provisions that the proposal was subject to acceptance by FPC's principal, that the proposal was an offer that would remain open for ten days, and that acceptance of the offer would indicate agreement to FPC's terms and conditions. (*Id.*) Again, no agent from Cattrell signed the space entitled "Acceptance of Proposal." (*Id.*)

On July 11, 2012, Cattrell sent a purchase order form ("Purchase Order No. 7317") requesting steel for the Weirton Elementary School project. Cattrell used the same one-page document, and again attached FPC's form, this time the Weirton Estimate, in its entirety. This time, however, the purchase order indicated on the front the quantity and price of the steel desired, rather than indicating the desired quantity on FPC's form. (*Id.*) Again, FPC argues that Cattrell's use of FPC's form incorporated FPC's terms and conditions into the contract. (ECF 2 ¶ 13.) The

3

record does not demonstrate that FPC sent any acknowledgement of the purchase order, but as before FPC performed in line with Cattrell's request and billed Cattrell for $476,100. (*Id.* ¶ 14.)

The final project, the Steubenville Waste Water Treatment Plant, followed a different pattern of negotiation. In that case, the first written communication between the parties was Cattrell's purchase order ("Purchase Order No. 9036") on November 5, 2012. (ECF 2-3, Exhibit C.) This purchase order referenced the products desired for the Steubenville project, but did not attach any FPC estimate form. Allegedly, the purchase order was sent after "several discussions" regarding the plant, and FPC prepared its price estimate after receipt of the purchase order. (ECF 8 at 3.) This price estimate form has not been made part of the record. Pursuant to the order, FPC supplied the requested products. (ECF 2 ¶ 16.) FPC argues that venue in this Court for the Steubenville claim is proper by application of the "pendent venue doctrine." (*Id.* ¶ 9.)

The central dispute raised in the pending motion is over the applicability of a forum selection provision contained in FPC's terms and conditions. As described above, FPC's standard price estimate form included, on the back, a list of "Terms and Conditions of Sale." Paragraph 18 of this list provides, in full:

> 18. Arbitration: Any controversy or claim arising out of or relating to this Proposal/Contract or the breach thereof, shall be resolved by institution of a civil action in the federal district court in Charleston, West Virginia, if jurisdiction exists. If federal jurisdiction does not exist, then the dispute will be resolved in civil litigation in the Circuit Court of Kanawha County, West Virginia.

(ECF 2-1, Exhibit A.)

FPC argues that the forum selection provision is valid, thus making venue before this Court proper. Cattrell argues that the forum selection provision does not control venue in this case because (1) it was not a part of the contract between the parties, and (2) even if it was, it is

4

unenforceable because not reasonably communicated. (ECF 7 at 4-6.) Cattrell further argues that, without the forum selection provision, venue is improper before this Court because no substantial part of the events or omissions giving rise to the claim occurred in this judicial district. (*Id*. at 3.) Cattrell asks for the Court, pursuant to Federal Rule of Civil Procedure 12(b)(3), to dismiss the case, or in the alternative transfer it to the Northern District of West Virginia, pursuant to either 28 U.S.C. §§ 1406 or 1404(a), where Cattrell argues venue would be proper. (*Id*. at 6-7.)

## II.  *Venue*

The parties' briefing spends considerable time addressing two issues related to the applicability of the forum selection clause contained in FPC's form: (1) whether the term was included in the ultimate contract between the parties, and (2) if it was, whether the provision is valid and enforceable. This Court need not address either issue for the purposes of disposing of this motion because it determines that venue is appropriate in this district without reference to the forum selection clause.

**A.     Legal Standard**

On a motion to dismiss for improper venue, a court is "permitted to consider evidence outside the pleadings." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (citing *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). Where no evidentiary hearing is held on the issue, a Plaintiff can survive a Rule 12(b)(3) motion to dismiss simply by making a "prima facie showing of venue." *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). For the purposes of the motion, "the allegations in plaintiff's Complaint and all reasonable inferences therefrom must be taken as true." *Cole v. Appalachian Power Co. v. Int'l*

*Bhd. of Elec. Workers, Local No. 978*, No. CIV. A, 1:94-0517, 1995 WL 463711, at *3 (S.D. W. Va. Mar. 30, 1995). *See also Aggarao*, 675 F.3d at 366 ("In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff.").

Whether venue is proper in a given district depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S. Ct. 568, 573 (2013). "Whether the parties' contract contains a forum-selection clause has no bearing on whether a case falls into one of the specified districts." *Id*. In a diversity action, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

**B.     Discussion**

In determining whether the events in a given case are substantial enough to support venue under § 1391(b)(2), a court "should not focus only on the matters that are in dispute or that directly led to the filing of the action; instead it should review 'the entire sequence of events underlying the claim.'" *Power Paragon, Inc.*, 605 F. Supp. 2d at 726 (quoting *Mitrano*, 377 F.3d at 405). Venue can be proper in more than one judicial district, and a plaintiff need not demonstrate that the chosen venue has the most substantial contacts to the claim at issue. *Mitrano*, 377 F.3d at 405; *see also C.H. James & Co. v. Fed. Food Marketers Co.*, 927 F. Supp. 187, 189 (S.D. W. Va. 1996) ("Venue is proper in each district that is the situs of a substantial part of the events or omissions giving rise to the claim. Thus, venue may lie in more than one district." (citations omitted)). Indeed, "it is sufficient that a substantial part of the events occurred in that venue, even if a greater

part of the events occurred elsewhere." *Power Paragon, Inc.*, 605 F. Supp. 2d at 726 (citing *Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 177 (D. Conn. 2003)).

FPC's Complaint alleges that venue is proper in the Southern District of West Virginia, regardless of the forum selection clause's applicability, for two reasons: (1) the contracts were formed in Charleston when Cattrell faxed its acceptance of FPC's estimate forms to FPC's home office; and (2) the basis of the breach of contract claim is Cattrell's failure to pay, and the payments at issue were due to be paid at FPC's home office in Charleston. The record in this case demonstrates that FPC has carried its burden of making a prima facie showing that venue is proper in this Court.

As noted above, the parties dispute the nature of contract formation in this case. FPC alleges that its estimate forms represented offers that were accepted by Cattrell's purchase orders, and Cattrell takes the position that its purchase orders were the offers and that FPC accepted by performing. It is axiomatic that contract formation is determined by the objective manifestations of the parties as to their mutual intent to be bound. *See* 1 Williston on Contracts 3:2 (4th ed.); *Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 450–51 (W. Va. 1993) ("It is elementary that mutuality of assent is an essential element of all contracts." (citation omitted)). Generally, this kind of inquiry is context-specific and will often turn on disputed factual issues best reserved for the jury. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414–15 (4th Cir. 1979) (construing West Virginia law); *La Grange Metal Products v. Pettibone Mulliken Corp.*, 436 N.E.2d 645, 650 (Ill. Ct. App. 1982) ("Whether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case.

7

Therefore, whether the letters were offers or invitations to deal was a question for the trier of fact to decide.").

For purposes of this motion, the Court need not take up these factual issues. As noted above, where venue is decided on the pleadings, those pleadings are to be construed in the light most favorable to the plaintiff, and the plaintiff need only demonstrate a prima facie case of proper venue. Taken as a whole, the course of dealings between the parties, as set forth in the Complaint and its Exhibits, demonstrates that a contractual relationship was formed, at least in part, in Charleston. Specifically, in this breach of contract dispute, significant negotiations giving rise to the contracts occurred at least in part in Charleston. Cattrell reached out to FPC, at its home office in Charleston, to purchase products for its construction projects. From that office, FPC filled out its estimate forms, determining the price for Cattrell's desired quantities of steel and, in Charleston, received the purchase orders for the products ultimately supplied.

As noted above, the Court need not resolve the details of the process of contract formation or the exact terms of that contract at this time. From the face of the Complaint and the attached Exhibits, it readily appears that negotiations spanned both districts, and that at least part of the exchange between the parties occurred by fax. Where such negotiations occur, venue can be proper in both districts from which communications are sent. *See Sacody Technologies, Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) ("The standard set forth in § 1391(b)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action."). Here the estimate forms and purchase orders sent into and out of Charleston reflect the price,

quantity and specifications of the steel products that are currently at the center of the contract dispute.

Furthermore, FPC's Complaint seeks the recovery of payments allegedly owed by Cattrell under the terms of the parties' contracts. (ECF 2.) The payments forming the basis for the contract dispute were due to be paid in Charleston. The pleadings thus evince that FPC's base of operations for both negotiating the contract and securing performance[1] of that contract was in Charleston, and that the FPC Charleston office remains significant to this action inasmuch as it is the place where the disputed payments are due. *See Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998) (finding proper venue in the Eastern District of North Carolina at least in part because the "omissions which are the focus of this case are Defendants' alleged failure to pay certain fees into [plaintiff's] Treasury Department in [the Eastern District]").

This Court has previously noted proper venue where, as here, "Defendants voluntarily reached into Charleston, entered into and continued a business relationship with Plaintiffs." *C.H. James*, 927 F. Supp. at 190. When the business relationship in that case formed the basis of a breach of contract dispute, the Court concluded that events occurring in this district "were substantial and significant to this action." *Id*. The same result obtains here. Cattrell consummated and carried on a contractual relationship with FPC, directing all contract negotiations to FPC's home office in Charleston. Cattrell's non-payment of monies owed, incurred under the contracts

---

[1] The record is not clear about FPC's precise role in delivering the steel. The Complaint states that FPC served as a "broker and supplier" of the steel involved. (ECF 2 ¶ 1.) Cattrell asserts that "[n]one of the products to have been supplied by Ferro Products were either manufactured in or shipped from the Southern District of West Virginia." (ECF 7-1 (affidavit of Christine Cattrell Hargrave, Secretary and Treasurer of Cattrell) ¶ 7.) FPC alternatively refers to its role as "supplying" and "sending" the goods to Cattrell. *Compare* ECF 2 ¶ 12 *with* ECF 8-1 (Affidavit of Kenneth Sayre, Vice President of FPC) ¶ 6. The record does not demonstrate the third party agent with whom FPC transacted to supply steel to Cattrell. For purposes of this motion, it is reasonable to infer that FPC manifested acceptance by performing (whatever that may have entailed) from its home office in the Southern District of West Virginia.

and payable to FPC in Charleston, is the subject of the current dispute. Accordingly, the Court finds that Plaintiff has carried its burden of making a prima facie venue showing and **DENIES** Defendant's motion to dismiss for improper venue.

### III. 28 U.S.C. § 1404(a) Transfer

Cattrell further moves the Court to transfer this case to the Northern District of West Virginia because it "is [the district] in which two of three construction projects occurred and where Cattrell has its West Virginia office (Wheeling, West Virginia)." (ECF 7 at 7.) Although venue would be proper in the Northern District, Cattrell has failed to carry its burden of showing sufficient inconvenience in this district to make transfer proper.

**A.**     **Legal Standard**

28 U.S.C. § 1404 provides a mechanism for transfer between district courts in which venue is proper. Specifically, it provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Decisions to transfer an action under this provision are committed to the discretion of the transferring judge. *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In exercising its discretion, the court is to undertake a case-by-case consideration of convenience and fairness. *Stewart*, 487 U.S. at 23. Factors to consider include:

> (1) Ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

*AFA Enters., Inc. v. American States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994).

Ultimately, the party seeking transfer has the burden of showing that venue is inconvenient. *See*, e.g., *Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 745 (S.D. W. Va. 2010). The plaintiff's choice of forum should be accorded considerable weight. *Id.* (citing *Piper Aircraft v. Reyno*, 454 U.S. 325, 255 (1981)). Moreover, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). A transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiff. *AFA Enters., Inc.*, 842 F. Supp. at 909 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

**B.     Discussion**

In this case, Defendant has failed to carry that burden. Defendant does not submit a sufficient record for the Court to appropriately assess the level of inconvenience involved. Instead it asserts only that:

> [The Northern District] is that in which two of three constructions projects occurred and where Cattrell has its West Virginia office (Wheeling, West Virginia.) It is also the District adjacent to both Cattrell's principal place of business (Toronto, Ohio) and the location of the third construction project involved in this matter, the Steubenville, Ohio Wastewater Treatment Plant.

(ECF 7 at 7.)

The only factor these pleadings implicate is the ease of access to sources of proof. The dispute over payment in this case involves a dispute over the quality of the steel that FPC supplied to Cattrell for use in its projects. (ECF 7 at 1-2.) Two of those projects occurred in the northern panhandle, and the other occurred in neighboring Ohio. It is on this basis that venue would be proper in the Northern District, and perhaps even more convenient.

11

However, the gain in convenience of litigating the case closer to the construction projects would not be substantial, given the proximity between the Northern and Southern Districts. This is not a situation where a case is being litigated across the country from the location of the events giving rise to the dispute, or where a defendant is being required to travel a great distance to appear in court. Any inconvenience involved in litigating this case a few hundred miles further across the state from where the disputed steel was incorporated in the construction projects is insufficient to offset the great weight accorded to the plaintiff's chosen forum. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 882 (finding that where two potential fora were in close proximity, the § 1404(a) factors "do not render one forum significantly more convenient than the other . . ."). More of a showing of inconvenience is required before this Court could deem transfer appropriate. Because the *AFA* factors do not demonstrate that venue would be significantly more convenient in the Northern District, this Court **DENIES** Defendant's motion to transfer venue.

## IV.    *CONCLUSION*

For the reasons discussed above, the Court **DENIES** the Motion to Dismiss or in the Alternative Motion to Transfer to the Northern District.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    September 29, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE